UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH MULLINS,
and NANCY MULLINS,
    Plaintiffs,

-vs-                                       CASE NO.:

NATIONWIDE ADVANTAGE
MORTGAGE COMPANY,

    Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiffs, KEITH MULLINS and NANCY MULLINS, by and through undersigned counsel, and hereby sue the Defendant, NATIONWIDE ADVANTAGE MORTGAGE COMPANY, and in support thereof respectfully alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA")

## INTRODUCTION

2. The TCPA was enacted to prevent companies like NATIONWIDE ADVANTAGE MORTGAGE COMPANY from invading American citizen's privacy and prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force

the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall."' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.  Venue is proper in this District because the Plaintiff resides in this District (Middle District of Florida), the phone calls were received in this District, and the Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

10. Plaintiffs KEITH MULLINS and NANCY MULLINS are natural persons, and citizens of the State of Florida, residing in Hillsborough County, Florida, and reside in this District.

11. Defendant is a company which services home mortgages.

12. The debt that is the subject matter of this complaint is a consumer debt.

13. Defendant is an Iowa corporation with a principal place of business and/or office for transacting its business located at 1100 Locust St. Dept. 2009, Des Moines, IA 50391 and conducts business in the State of Florida.

14. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, by the Defendant's placing of illegal calls to Plaintiffs while they resided in the State of Florida.

15. Defendant has a Registered Agent in the State of Florida at Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

16. Defendant, at all material times, was attempting to collect on a home mortgage (hereinafter the "subject account"), which was issued and serviced by Defendant.

17. In approximately July of 2013, Defendant began a campaign of telephone harassment of the Plaintiffs by calling Plaintiffs cellular telephones multiple times a day in an effort to collect the debt at issue.

18. Mr. and Mrs. Mullins filed for Chapter 7 bankruptcy, and Nationwide Advantage Mortgage Company was aware of the filing and fully participated in the bankruptcy proceedings.

19. After fully satisfying the requirements of the United States Bankruptcy Code, Mr. and Mrs. Mullins were granted a Discharge on June 18, 2014. Notice of this discharge was mailed by the Court to Nationwide Advantage Mortgage Company on June 20, 2014. (See Exhibit A)

20. Despite this debt being discharged in bankruptcy, and Defendant being fully advised of and participating in the proceedings, calls regarding the debt continued to both Plaintiffs' cell phones.

21. On February 20, 2015, Plaintiffs' Bankruptcy Attorney sent a certified letter to Nationwide Advantage Mortgage Company instructing them to cease calling, that they were in violation of the law, and attaching the Discharge of Debtors document. (See Exhibit B)

22. Despite the fact that Plaintiffs were represented by counsel, that the debt was discharged in Bankruptcy, and that the Defendant received a certified letter, with proof, stating Plaintiffs were represented and the debt was discharged, Defendant continued to call Plaintiffs on their cell phones.

23. In approximately June of 2015, Mr. Mullins told Defendant to stop calling and stated "Do not call me anymore." Despite Plaintiff's clear instructions to Defendant to stop calling, Defendant continued to call Plaintiffs on their cellular telephones.

24. Despite repeated requests for the calls to stop, Defendant continued its campaign of harassment of the Plaintiffs.

25. Defendant NATIONWIDE ADVANTAGE MORTGAGE COMPANY knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately 2013 through the filing of this Complaint with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

26. Upon information and belief, some or all of the calls the Defendant made to Plaintiff cellular telephone number were made using an "automatic telephone dialing system" which has the capacity

4

to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received, because he heard a pause when he answered his phone before a voice came on the line, and because of the multitude of prerecorded messages that he received.

27.     Furthermore, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

28.     Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number after June 18, 2014 were done so after Plaintiff had revoked consent and without the "express consent" of the Plaintiff.

29.     Plaintiff Keith Mullins is the subscriber, regular user and carrier of the cellular telephone number, (813) *** - 1834. Plaintiff Nancy Mullins is the subscriber, regular user and carrier of the cellular telephone number, (813) *** - 4951. Plaintiffs were the called party and recipient of Defendant's autodialer calls.

30.     The autodialer calls from Defendant came from the telephone numbers including but not limited to 800-356-3442 and when that number is called, an automated voice answers and says the following: "Hello. This is the information line for Nationwide Advantage Mortgage, your call may be recorded to ensure excellent service. Please be advised that our office may be attempting to collect a debt, and any information obtained may be used for that purpose."

31.     Despite Plaintiff informing Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued.

32. The autodialer calls from Defendant continued, on average, three (3) times a day from June 18, 2014 through the filing of this Complaint. Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of all autodialer calls made to Plaintiff.

33. The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiffs' cellular telephones in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number.

34. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls well-beyond June 18, 2014, when Plaintiffs debt was discharged in Bankruptcy. While Plaintiffs were not able to keep track of every single call, Plaintiffs received approximately 150 telephone calls from NATIONWIDE ADVANTAGE MORTGAGE COMPANY to their cellular phones between July 7, 2015 and December 15, 2015.

35. Defendant's corporate policy is structured as to continue to call individuals like the Plaintiffs, despite the individuals, like Plaintiffs, advising Defendant to stop calling.

36. Defendant's corporate policy provided no means for the Plaintiffs to have their cellular numbers removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiffs.

37. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

38. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call people who have revoked consent to be called.

39. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

40. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiffs' cellular telephones.

## COUNT I
### (Violation of the TCPA)

43. Plaintiffs re-allege and incorporates Paragraphs one (1) through forty (40) above as if fully stated herein.

44. None of Defendant's autodialer calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

45. Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone numbers after Plaintiff revoked consent to be called and without Plaintiff's express consent.

46. The Defendant willfully and/or knowingly violated the TCPA, <u>especially</u> for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant in approximately June of 2015, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent Defendant believed it had to contact the Plaintiff, and told Defendant to stop calling the Plaintiff.

47. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Defendant, NATIONWIDE ADVANTAGE MORTGAGE COMPANY for statutory damages, punitive damages, actual damages, treble damages, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

48. Plaintiffs incorporate Paragraphs one (1) through forty (40) above as if fully set forth herein.

49. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute §559.72.

50. Defendant violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or his family. Defendant continued to call Plaintiffs after the debt was discharged in Bankruptcy, and after Plaintiffs informed Defendant to stop calling. Defendant called Plaintiffs almost daily which is a frequency that can be reasonably expected to harass. The calls continue through the filing of this complaint.

51. Defendant's actions have directly and proximately resulted in Plaintiffs prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NATIONWIDE ADVANTAGE MORTGAGE COMPANY, for statutory damages, punitive damages, actual damages, attorney's fees, costs, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Tav Gomez
---
Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 222-4725
Florida Bar #: 338620
Attorney for Plaintiff
TGomez@ForThePeople.com